UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**EDMUNDO R. STIWARD**                                                             **CIVIL ACTION**

**VERSUS**                                                                                        **NO. 05-1926**

**UNITED STATES OF AMERICA**                                                **SECTION: "K"(2)**

**MEMORANDUM ORDER**

Before the Court is the Plaintiff's Motion for Summary Judgment (Rec. Doc. 47) ("Mot."). The Court has reviewed the relevant pleadings, including the opposition by Defendant United States of America (Rec. Doc. 51) ("Opp.") and reply by Plaintiff (Rec. Doc. 55) ("Reply"), it has evaluated the applicable law, and it finds that issues of material fact are still in dispute concerning the defense of sovereign immunity and the success of the Plaintiff's claims. Therefore, summary judgment will be denied.

**I. BACKGROUND**

The present claim is a personal injury action brought under the Suits in Admiralty Act ("SAA"), codified at 46 U.S.C. § 30901, *et seq.*, and the Jones Act, 46 U.S.C. § 688, *et seq*. The Plaintiff, Edmundo Stiward, was an Able-Bodied Seaman serving aboard the M/V Cape Horn, a vessel owned by the United States and operated under contract by Marine Transport Lines, Inc., the company that employed the Plaintiff. On February 2, 2003, the M/V Cape Horn departed San Francisco bound for the Persian Gulf. The vessel departed its last port, Fujairah, United Arab Emirates, on June 13, 2003, and returned to San Francisco, arriving on July 15, 2003.

1

During this return trip, at some point in late June or early July, the Plaintiff began experiencing the "gradual onset of diabetic ketoacidosis." Plaintiff's Statement of Undisputed Facts ¶ 12 ("Pl. Undisp. Facts"). The ship's officers eventually contacted Medical Advisory Systems doctors on shore, related the Plaintiff's symptoms, and received the diagnosis. The prescription was to "get insulin to the patient or the patient to insulin." Pl. Undisp. Facts ¶ 13. The M/V Cape Horn did not have insulin on board, however. The M/V Cape Horn continued to steam towards California. Once in range, paramedics were flown to the vessel who then stabilized the Plaintiff. On July 8, 2003, the Plaintiff was airlifted from the vessel to Stanford Hospital in San Francisco. The Plaintiff eventually had to have the forefoot portion of both his feet amputated due to dry gangrene that resulted from his diabetic attack.

      The Plaintiff brings two causes of action. First, based on the Jones Act, he alleges that his injuries were sustained due to the negligence of the Defendant and its agents, due to the unseaworthiness of the vessel, and due to the Defendant's "breach of [its] obligation under the circumstances, including their obligation to provide prompt and adequate medical care, treatment, maintenance and cure." Complaint ¶ 12 ("Compl."). Second, he claims that the Defendant has failed to provide maintenance, cure, and found benefits. Compl. ¶ 17. In the present motion for summary judgment, the Plaintiff seeks judgment on the following points: (1) that the vessel was unseaworthy because it did not have insulin on board; (2) that the United States was negligent *per se* because it violated the provisions of 46 U.S.C. § 11102(a) which require its ships to maintain a well-stocked medicine chest

      Defendant United States opposes these motions. It claims that a factual question exists regarding fault and causation here, specifically whether the Plaintiff was honest regarding any

prior diabetic condition or history of the disease.  The United States also alleges that its failure to stock insulin on board the M/V Cape Horn was not a negligent act and did not render it unseaworthy.  Moreover, the United States alleges that the Plaintiff has not adequately demonstrated causation.  Finally, the United States claims that, because no statute prescribes the storage of insulin on U.S. merchant vessels, the Plaintiff alleges a negligent act that falls within the discretionary function exception of the Suits in Admiralty Act, which abrogates the United States' limited sovereign immunity waiver in that Act.

## II.  ANALYSIS

The Plaintiff brings his claims under the jurisdiction of the Suits in Admiralty Act ("SAA"), codified at 46 U.S.C. § 30901, *et seq.*, which "serves as a waiver of sovereign immunity and authorizes suits against the government in admiralty cases where such claims could be brought against a private party."  *Theriot v. United States*, 254 F.3d 388, 397 (5th Cir. 1998); *see* 46 U.S.C. § 30903 (2006) (providing cause of action in admiralty against the United States).  However, "the SAA does not waive immunity for discretionary acts of government agencies that fall within the discretionary function exception set fort in the Federal Tort Claims Act."  *Id.*; *see Wiggins v. United States*, 799 F.2d 962, 966 (5th Cir. 1986) (finding that "a discretionary functions limitation is implicit in private suits brought against the United States Government under the Suits in Admiralty Act").  The exception provides that "the government is not liable for '[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Theriot*, 245 F.3d at 397,

*quoting* 28 U.S.C. § 2680(a).

As set forth by the Supreme Court, the discretionary function exception "covers only acts that are discretionary in nature, acts that 'involve an element of judgment or choice.'" *United States v. Gaubert*, 499 U.S. 315, 323, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991), *quoting Berkovitz v. United States*, 486 U.S. 531, 535, 108 S.Ct. 1954, 1957, 100 L.Ed.2d 531 (1988). "[I]t is the nature of the conduct, rather than the status of the actor that governs whether the discretionary function applies in a given case." *United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but adhere to the directive.'" *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273, *quoting Berkovitz*, 486 U.S. at 535, 108 S.Ct. at 1957. Even where the challenged action involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 535, 108 S.Ct. at 1957. "Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273-74 (internal quotations and citations omitted).

It is generally undisputed the determination of "[w]hether the government's conduct falls within the discretionary function exception is a question of law." *Theriot*, 245 F.3d at 396. If the government's conduct falls within the discretionary function exception, then the district court

must dismiss the case for lack of subject matter jurisdiction. *Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990) (applying discretionary function exception of FTCA). The Fifth Circuit has recognized that "[a] court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997). "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

The Fifth Circuit has recognized, however, that resolution in the context of a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is not always appropriate. "[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits," the Fifth Circuit has held that "the trial court must assume jurisdiction and proceed to the merits," therefore addressing the motion under either Rule 12(b)(6) motion (motion to dismiss for failure to state a claim) or a Rule 56 summary judgment motion. *Montez*, 392 F.3d at 149. *Montez* considered a case in which the district court had dismissed a tort claim against the Navy in a Rule 12(b)(1) motion. The cause of action concerned allegations of negligent driving by an Navy enlisted man that resulted in the death of a civilian. The district court ruled that the enlisted man was not "acting within the scope of his office or employment," thus granting the Rule 12(b)(1) motion because the action could not proceed against the Navy. *Id.* at 149. The Fifth Circuit reversed the district court's decision, holding that "a jurisdictional attack intertwined with the merits of an FTCA claim should be treated like any other intertwined

attack, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper." *Id.* at 150; *see also Baldassaro v. United States*, 64 F.3d 206, 212 (5th Cir. 1995) (affirming district court's grant of summary judgment based on discretionary function exception). Similar to *Montez*, this Court finds that the present summary judgment motion, the Government's response claiming sovereign immunity under the discretionary function exception, raises factual issues that are "central" to and "intertwined" with both sovereign immunity and the existence of an action. Accordingly, this Court will use the Rule 56 summary judgment standard here.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Federal Ins. Co. v. Ace Prop. & Cas. Co.*, 429 F.3d 120, 122 (5th Cir. 2005), *quoting Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004). "Courts must view all of the evidence and all factual inferences from the evidence in the light most favorable to the non-movant." *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 352 (5th Cir. 1989). However, "summary judgment must be denied when 'reasonable minds might differ on the inferences arising from undisputed facts.'" *Id.*, *quoting Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Because "Jones Act negligence and unseaworthiness are two separate and distinct claims," this Court will address each in turn. *Alvarez v. J. Ray McDermott & Co.*, 674 F.2d 1037, 1041 (5th Cir. 1982). First

and foremost, however, the applicability of sovereign immunity, specifically the discretionary function exception, must be considered.

## A.  Does the Discretionary Function Apply Here, thus Precluding Any Suit Under Sovereign Immunity?

As a preliminary matter, this Court must determine whether the discretionary function exception applies.  It appears, however, that final determination of this issue is dependent upon facts that have yet to be developed.  First, as stated above, liability may be found if a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but adhere to the directive.'" *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273, *quoting Berkovitz*, 486 U.S. at 535, 108 S.Ct. at 1957.  As will be developed further herein, it is not necessarily clear that a statute, regulation, or policy specifically prescribes a course of action regarding the stocking of insulin on board the M/V Cape Horn.  The Plaintiff cites a statute, 46 U.S.C. § 11102(a), which provides:

> A vessel of the United States on a voyage from a port in the United States to a foreign port (except to a Canadian port), and a vessel of the United States of at least 75 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title on a voyage between a port of the United States on the Atlantic Ocean and Pacific Ocean, shall be provided with a medicine chest.

46 U.S.C. § 11102(a). What is defined as a "medicine chest", and what that medicine chest must contain, is not clear from the facts presented here.  Therefore, it is not clear how much discretion, if any, the operator of a vessel has in choosing whether or not to stock the ship's medicine chest with insulin.

Assuming, without deciding, that no statute or policy exists that requires the stocking of

7

insulin on board United States vessels, the discretionary function exception would likely apply, which provides that "the government is not liable for '[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" *Theriot*, 245 F.3d at 397, *quoting* 28 U.S.C. § 2680(a). However, this exception "covers only acts that are discretionary in nature, acts that 'involve an element of judgment or choice.'" *Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1273, *quoting Berkovitz*, 486 U.S. at 535, 108 S.Ct. at 1957. The Government claims that, because there is no policy or statute requiring insulin to be stocked in medicine chests, Marine Transport Lines, the operator of the M/V Cape Horn on behalf of the United States, made a rational policy decision not to carry insulin on board. Opp. at 11. However, the Plaintiff responds that Marine Transport Lines actually made the exact *opposite* decision when it instituted a company policy to stock medicine chests with insulin. Mot. at 9. Indeed, Plaintiff contends that a request was made for insulin while the M/V Cape Horn was in the Middle East, but the crew failed to pick up the insulin that had been requested. Mot., Ex. K, Ex. F. It is not clear from the affidavits and other evidence before the Court why the insulin was not placed on board. It is possible that this failure was due to some negligence or malfeasance by the crew, or it is possible that the ship's master made another discretionary decision to depart without insulin, a decision that could shield the United States from liability. These facts have not been developed yet, however. Moreover, as will be explained further within this opinion, these same jurisdictional facts are also central to issues of liability. Mindful of the Fifth Circuit's *Montez* decision, this Court finds it inappropriate to grant summary judgment because factual issues of jurisdiction are "intertwined" with liability, and

furthermore these issues have not yet been resolved. Summary judgment will therefore be denied on the issue of the applicability of sovereign immunity and the discretionary exception.

**B.  Was the Vessel Unseaworthy Because It Did Not Carry Insulin?**

"For a vessel to be found unseaworthy, the injured seaman must prove that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purposes for which it is to be used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir. 2001) (citing cases). "In addition, the plaintiff must establish a causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.* The Fifth Circuit has set forth that "seaworthiness is an issue of fact reviewed for clear error." *Folger Coffee Co. v. Olivebank*, 201 F.3d 632, 636 (5th Cir. 2000).

Plaintiff alleges here that the failure of the Defendant to maintain a medicine chest that included insulin on board the M/V Cape Horn rendered that vessel unseaworthy. The Plaintiff focuses his argument on a single case: *Stevens v. Seacost Co, Inc*, 414 F.2d 1032 (5th Cir. 1969). In that matter, a seaman severely injured his hand in the course of working on an oyster dredging vessel. The vessel on which the injury occurred did not have a radio, which required the ship to travel to other vessels and finally a drilling rig to call for help in order to have the seaman airlifted. *Id.* at 1039. Moreover, the vessel had only aspirin on board, which allegedly resulted in the seaman suffering from intense pain while awaiting the airlift. *Id.* The Fifth Circuit found in favor of the seaman, holding that the lack of stronger pain medication was a "glaring deficiency in the ship's stores and hence her unseaworthiness." *Id.* The court explained, "When time - which was passing by needlessly from the failure of the vessel to have rudimentary radio

9

communication facilities - is filled with conscious pain that cannot be reduced or alleviated from want of sedations which a vessel ought, and is permitted to carry, the damage for this element becomes augmented and is traceable to unseaworthiness and negligence of Shipowner." *Id.* at 1040.

Based on this case, the Plaintiff claims that he is entitled to summary judgment. However, factual issues remain that preclude summary judgment at this time. There is a question of fact as to whether or not insulin must be carried on board all ships to make them seaworthy. This Court is not persuaded solely by *Stevens* that insulin must be carried on board all ships to make them seaworthy because insulin, unlike painkillers, is needed by a much smaller portion of the population and is generally more difficult to store. The only direct authority on point allegedly requiring insulin on vessels (and cited by Plaintiff) is a manual published by the United States Public Health Service entitled *The Ship's Medicine Chest and Medical Aid at Sea*, which lists as "recommended content for a ship's medicine chest" that it carry insulin. Mot. at 5. The Court notes that the manual provides only a recommendation. Moreover, the manual itself states "Some ships will require more different types of supplies, others fewer." Mot. at 5, *quoting The Ship's Medicine Chest and Medical Aid at Sea*, App. G-1 (2003). The Government has alleged, without apparent contradiction, that because the M/V Cape Horn was a Military Sealift Command vessel, no insulin dependent seamen are allowed to serve on board. Government's Statement of Undisputed Facts at 2 ("Gov't Undisp. Facts"). The development of this fact at trial may assist this Court in determining whether this *specific* vessel is required to carry insulin to be seaworthy. The Plaintiff claims, however, that this particular vessel did make a request for insulin on April 23, 2003. Mot. at 6, Ex. J. This fact appears to be

disputed by the Government.  Moreover, this Court deems it necessary to evaluate further facts surrounding this request to determine whether this alleged request for insulin should have any bearing on whether the M/V Cape Horn was *required* to have insulin on board.  Consequently, on the issue of seaworthiness, summary judgment will be denied.

**C.  Was the Government Negligent *Per Se* By Not Requiring Its Vessel to Carry Insulin?**

"Under the doctrine of negligence *per se*, a Jones Act employer may be liable if its violation of a statutory duty causes injury to its seaman-employee."  *Park v. Stockstill Boat Rentals, Inc.*, 492 F.3d 600, 602 (5th Cir. 2007) (citing cases).  There are five elements to a Jones Act negligence *per se* claim: "(1) a violation of [a statute or] Coast Guard regulations, (2) the plaintiff's membership in the class of intended beneficiaries of the regulations, (3) an injury of a type against which the regulations are designed to protect, (4) the unexcused nature of the regulatory violation, and (5) causation."  *Smith v. Trans-World Drilling Co.*, 772 F.2d 157, 160-61 (5th Cir. 1985), *citing Reyes v. Vantage S.S. Co., Inc.*, 558 F.2d 238, 242-44 (5th Cir.1977) (*Reyes I*), *modified*, 609 F.2d 140 (1980) (*Reyes II*); *see Park*, 492 F.3d at 603.

The point of dispute here is whether the Government committed a statutory violation in this case.  As cited previously in this opinion, the Plaintiff points to 46 U.S.C. § 11102(a), a statute that requires United States vessels traveling to foreign ports "shall be provided with a medicine chest."  46 U.S.C. § 11102(a).  The Plaintiff asserts further that subsection (b) of this section, which imposes civil penalties for violations of subsection (a), reinforces the policy and need for strict adherence to this requirement.  *See* 46 U.S.C. § 11102(b) (establishing $500 civil penalty for non-compliance with subsection (a)).  Defendant United States argues persuasively,

however, that the statute only requires a "medicine chest," and it does not provide what must specifically be inside that chest. The Defendant further counters that the Plaintiff has not adequately alleged that the failure to have insulin on board was the proximate cause of his injury. However, again, both parties raise valid arguments that raise issues of fact regarding whether vessels must carry insulin on board as part of a well-stocked medicine chest. This Court must also decide whether this specific ship was required to have insulin on board. And, it does indeed appear arguable that, if there is a duty to have insulin on board, the breach of such duty could have been a proximate cause of at least some of the Plaintiff's injury. As has occurred through this opinion, this Court finds itself weighing disputed facts that bear directly upon the liability of either party for the injuries suffered by the Plaintiff. Therefore, summary judgment will be denied concerning the negligence *per se* claim as well.

## III. CONCLUSION

For the foregoing reasons, this Court finds that summary judgment in favor of either party is premature due to the issues of material fact in dispute. Accordingly,

**IT IS ORDERED** that the Plaintiff's Motion for Summary Judgment (Rec. Doc. 47) is **DENIED**, and

**IT IS FURTHER ORDERED** that the United States is not entitled to the defense of sovereign immunity at this time due to issues of disputed fact concerning the applicability of that defense.

New Orleans, Louisiana, on this 3rd day of April, 2008.

**STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE**